UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| KENNETH THOMPSON, | |
| Plaintiff, | Case No. 1:21-cv-683 |
| v. | Honorable Paul L. Maloney |
| HEIDI WASHINGTON et al., | |
| Defendants. | |
| _____/ | |

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983, as well as the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA). Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 4.)

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Davids. The Court will also dismiss, for failure to state a claim, the following claims: (1) Plaintiff's Eighth Amendment claims regarding his placement in segregation and the conditions therein for (a) monetary damages against Defendants Washington, Dawdy, Maranka, Sandborn, and Barber

in their official capacities, and (b) Plaintiff's claims for declaratory and injunctive relief against Defendants Maranka, Sandborn, and Barber in their individual and official capacities; (2) Plaintiff's Eighth Amendment claims against Defendants regarding the denial of mental health treatment; (3) Plaintiff's individual capacity ADA and RA claims against Defendants; and (4) Plaintiff's official capacity ADA and RA claims against Defendants Dawdy, Maranka, Sandborn, and Barber.

The following claims remain in the case: (1) Plaintiff's Eighth Amendment claims regarding his placement in segregation and the conditions therein for (a) declaratory and injunctive relief against Defendants Washington and Dawdy in their official capacities, and (b) monetary damages against Defendants Washington, Dawdy, Maranka, Sandborn, and Barber in their individual capacities for monetary damages; and (2) Plaintiff's official capacity ADA and RA claims against Defendant Washington.

## Discussion

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues MDOC Director Heidi Washington, MDOC Mental Health Director David Dawdy, and the following ICF Personnel: Warden John Davids, Deputy Wardens Lynn Sandborn and Steve Barber, and Mental Health Unit Chief David Maranka.

Plaintiff alleges that he suffers from serious mental disabilities and has been diagnosed with mood disorder and major depression with psychotic features by MDOC mental health personnel. (ECF No. 1, PageID.4.) Plaintiff experiences symptoms such as depression, anxiety, paranoia, and hallucinations. (*Id.*) His mental disability "results in a substantial disorder of thought

and impaired judgment, behavior, problems concentrating, making decisions, difficulty sleeping, all of which affect [his] daily activities." (*Id.*) Plaintiff is prescribed Zoloft and Geodon. (*Id.*)

Plaintiff contends that Defendants have "either failed or interfered with providing Plaintiff appropriate mental health treatment, and subject him to disciplinary treatment in lieu of providing that treatment." (*Id.*) According to Plaintiff, Defendants have "an illegal practice of punishing mentally disabled prisoners for behavior or symptoms known to be related to mental illness, despite the prohibition on such punishment set forth in MDOC Policy Directive 03.03.105." (*Id.*, PageID.5.) Plaintiff avers that Defendants Washington and Dawdy have implemented inadequate screening policies and procedures regarding mentally disabled prisoners and the misconduct process. (*Id.*, PageID.5–6.) He alleges that these inadequate policies have caused MDOC officials to issue him "misconduct reports and guilty findings, as pretext to discrimination against him by virtue of his mental disability." (*Id.*, PageID.6.)

For example, on April 6, 2019, Plaintiff was placed in segregation after receiving several misconducts, but the investigator failed to complete the screening form and Plaintiff was not screened to determine whether he was exhibiting signs of mental illness at the time of the misconduct. (*Id.*) Three days later, Defendant Maranka falsified a Misconduct Sanction Assessment Form without meeting with or evaluating Plaintiff. (*Id.*) The form indicated that Plaintiff's mental disability "had no effect on the conduct alleged in the misconduct report." (*Id.*) On April 10, 2019, Plaintiff was found guilty and sanctioned to 20 days of detention and 60 days' loss of privileges (LOP), even though a mental health social worker had notified the hearing officer that long-term segregation could lead to an increase in Plaintiff's mental health symptoms. (*Id.*, PageID.7.) Plaintiff claims that he was denied exercise for a period of 80 days. (*Id.*)

3

On April 16, 2019, Defendants Sandborn and Maranka classified Plaintiff to administrative segregation, where he remained for a total of 177 days. (*Id.*) Plaintiff claims that he was denied mental health treatment in violation of MDOC Policy Directive 04.06.182. (*Id.*) Plaintiff experienced "social and sensory deprivation" because of the "constant cell confinement." (*Id.*)

On March 6, 2020, Plaintiff received another misconduct and was placed in segregation "after exhibiting behavior related to his mental disability." (*Id.*) Defendant Maranka again falsified the Misconduct Sanction Assessment Form. (*Id.*) A hearing officer found Plaintiff guilty and sanctioned him to 10 days of detention and 30 days' LOP, "despite notes on the assessment form that segregation could result in an increase of Plaintiff's mental health symptoms." (*Id.*) Defendants Sandborn and Maranka subsequently classified Plaintiff to administrative segregation for 39 days without mental health treatment. (*Id.*)

Plaintiff was again placed in segregation after receiving a misconduct on February 18, 2021. (*Id.*) He was found guilty and sanctioned to 30 days of detention and 90 days' LOP "despite the assessment warning Defendants that segregation could worsen [his] mental disability." (*Id.*, PageID.8.) Defendants Barber and Maranka subsequently classified Plaintiff to administrative segregation again. (*Id.*)

Plaintiff contends that these misconduct reports should not have been processed had Defendants complied with MDOC policy. (*Id.*) He asserts that the sanctions imposed following guilty findings subject him to denial of exercise, denial of in-cell activities, congregate activities, access to sunlight and fresh air, and other privileges, such as the day room, activity room, yard, television, telephone, etc. (*Id.*) Plaintiff avers that these sanctions "are so severe and restrictive that they exacerbate the symptoms of Plaintiff's mental conditions." (*Id.*) He is subject to these sanctions until he qualifies for five hours of limited exercise after serving 30 days' worth of

4

sanctions. (*Id.*, PgageID.9.) In other words, Plaintiff "must serve four consecutive weeks confined to his cell with no activities to engage in before he is allowed to attend one hour of yard for five days." (*Id.*) Plaintiff contends that this policy is unconstitutional as applied to mentally disabled inmates. (*Id.*) He alleges that he suffers serious psychological harm after enduring weeks of idleness in his cell. (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his Eighth Amendment rights, as well as the ADA and the RA. (*Id.*, PageID.10.) Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.10–11.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

5

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted above, Plaintiff asserts violations of his rights under the Eighth Amendment, the ADA, and the RA.

    **A.**    **Eighth Amendment Claims**

Plaintiff contends that Defendants violated his Eighth Amendment rights when "they punished him for behavior or symptoms of his mental disability, and subjected him to social and sensory deprivations, and by denying him daily exercise." (ECF No. 1, PageID.10.) As noted *supra*, Plaintiff contends that Defendants Washington and Dawdy have implemented inadequate policies and procedures "to ensure that seriously mentally disabled prisoners are not subject to the misconduct process for behavior or symptoms related to their mental disability." (*Id.*, PageID.6.) Plaintiff suggests that Defendants Davids, Sandborn, Barber, and Maranka have violated his Eighth Amendment rights by employing these inadequate policies to find him guilty of misconducts arising from the symptoms of his mental disability and punishing him for such symptoms. Plaintiff contends that he has been placed in long-term segregation and denied various privileges, and that these sanctions only exacerbate the symptoms of his mental disability. (*Id.*, PageID.6–9.) He suggests that he does not receive mental health treatment while in segregation. (*Id.*)

6

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Plaintiff's allegations implicate two distinct Eighth Amendment claims: a claim based on placement in segregation and the conditions experienced therein, and a claim based on the refusal to provide mental health treatment to Plaintiff while he was in segregation. The Court considers each claim below.

### 1. Placement and Conditions in Segregation

In the MDOC, security classifications, from least to most secure, are as follows: Levels I, II, IV, V, and administrative segregation. MDOC Policy Directive 05.01.130 ¶ B (Oct. 10, 2011). There are three types of segregation: temporary segregation, administrative segregation, and punitive segregation. MDOC Policy Directive 04.05.120 ¶¶ M, Q, Z (June 1, 2019). Administrative segregation is the most restrictive and is imposed for institutional security, *e.g.*, when a prisoner poses a serious escape risk. *Id.* ¶ Q. Detention, or "punitive segregation," can be imposed as a sanction for committing a major misconduct, if ordered by the hearing officer. *Id.*

7

¶ Z. If possible, detention is served in a designated detention cell rather than in a cell designated for administrative segregation. *Id.* A prisoner may not remain in detention for a period longer than that ordered by the hearing officer, *id.* ¶ Z, but a prisoner classified to administrative segregation remains in that classification until he is reclassified, *id.* ¶ I. The "behavioral adjustment" of a prisoner in segregation is reviewed periodically by the Security Classification Committee (SCC). *Id.* ¶ FFF. Reclassification from administrative segregation occurs only with the approval of the SCC and the Warden (or designee). *Id.* ¶ KKK.

Prisoners in segregation endure property and activity restrictions in addition to those that apply to general population prisoners. Of significance to Plaintiff's allegations is a restriction on "out-of-cell" exercise:

> [A] prisoner in segregation shall be provided with . . . a minimum of one hour per day, five days per week of out-of-cell exercise, except that, for reasons of safety or security, a prisoner serving a sanction of detention or loss of privileges that includes the loss of yard may be provided such exercise only after s/he has served a period of time determined by the Warden or Deputy Warden. However, the prisoner shall not be deprived of out-of-cell exercise for more than 30 consecutive days without being provided a seven-day break during which the prisoner shall be given the opportunity for our-of-cell exercise at least one hour per day, five days per week.

*Id.* ¶ AA, 21. Plaintiff suggests, however, that he was denied exercise for a period of 80 days and that he is denied other privileges and programming while in segregation. Accepting these allegations as true, the Court construes Plaintiff's complaint to assert that he is not being permitted out of his cell while in segregation for exercise or other programming.

The Eighth Amendment prohibits any punishment which violates the civilized standards of humanity and decency or involves the unnecessary and wanton infliction of pain. *See Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976). To prove an Eighth Amendment violation, an inmate must show that he has been deprived of the minimum civilized measures of life's necessities. *See Rhodes*, 452 U.S. at 347. Because placement in segregation is a routine discomfort that is a part of

8

the penalty that criminal offenders pay for their offenses against society, it is typically insufficient to support an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008); *see also Lacey v. Michigan Dep't of Corr.*, No. 95-1097, 1995 WL 564301 (6th Cir. Sept. 21, 1995) (placement in detention did not violate Eighth Amendment); *Eaddy v. Foltz*, No. 85-1419, 1985 WL 14065 (6th Cir. Dec. 18, 1985) (whether an Eighth Amendment claim is stated for placement in segregation depends upon severity or pervasiveness of conditions).

Nonetheless, the Supreme Court has recently focused attention toward the consequences of long-term isolation in segregation:

> The human toll wrought by extended terms of isolation long has been understood, and questioned, by writers and commentators. Eighteenth-century British prison reformer John Howard wrote "that criminals who had affected an air of boldness during their trial, and appeared quite unconcerned at the pronouncing sentence upon them, were struck with horror, and shed tears when brought to these darksome solitary abodes." The State of the Prisons in England and Wales 152 (1777). In literature, Charles Dickens recounted the toil of Dr. Manette, whose 18 years of isolation in One Hundred and Five, North Tower, caused him, even years after his release, to lapse in and out of a mindless state with almost no awareness or appreciation for time or his surroundings. A Tale of Two Cities (1859). And even Manette, while imprisoned, had a work bench and tools to make shoes, a type of diversion no doubt denied many of today's inmates.
>
> One hundred and twenty-five years ago, this Court recognized that, even for prisoners sentenced to death, solitary confinement bears "a further terror and peculiar mark of infamy." *In re Medley,* 134 U.S. 160, 170, 10 S. Ct. 384, 33 L. Ed. 835 (1890); see also *id.,* at 168, 10 S. Ct. 384 ("A considerable number of the prisoners fell, after even a short [solitary] confinement, into a semi-fatuous condition . . . and others became violently insane; others, still, committed suicide").

9

*Davis v. Ayala*, 576 U.S. 257, 287 (2015) (Kennedy, J., concurring); *see also Glossip v. Gross*, 576 U.S. 863, 925–26 (2015) (Breyer, J., dissenting) (noting the "dehumanizing conditions of confinement" and that "prolonged solitary confinement produces numerous deleterious harms").

Indeed, several studies have shown that long-term isolation has deleterious psychological effects. "There is not a single study of solitary confinement wherein non-voluntary confinement that lasted for longer than 10 days failed to result in negative psychological effects." *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 566 (3d Cir. 2017) (quoting Craig Haney & Mona Lynch, *Regulating Prisons of the Future: A Psychological Analysis of Supermax and Solitary Confinement*, 23 N.Y.U. Rev. L. & Soc. Change 477, 531 (1997)). "[E]ven a few days of solitary confinement will predictably shift the electroencephalogram (EEG) pattern toward an abnormal pattern characteristic of stupor and delirium." *Id.* at 567 (quoting Stuart Grassian, *Psychiatric Effects of Solitary Confinement*, 22 Wash. U. J.L. & Pol'y 325, 331 (2006)). Solitary confinement frequently causes "[a]nxiety . . . [d]epression, post-traumatic stress disorder, psychosis, hallucinations, paranoia, claustrophobia, and suicidal ideation." *Id.* at 566 (citing Haney & Lynch, at 500–01, 521–31).

Further, the Sixth Circuit recently recognized that segregation more severely affects inmates with existing mental illness. *See J.H. v. Williamson Cnty.*, 951 F.3d 709 (6th Cir. 2020). "[S]olitary confinement 'can cause severe and traumatic psychological damage'" and an inmate's existing mental illness should be considered before placing him in or extending his isolation. *Id.* at 719 (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017)); *see also Wallace v. Baldwin*, 895 F.3d 481, 485 (7th Cir. 2018) (holding that the continued isolation of an inmate raised a "genuine concern that the negative psychological effects of his segregation will drive him to self-harm" because he had a mental illness and had already been isolated for 11 years). While

10

considering the mental health of the inmate, a court should remain "mindful of the nature and duration" of the confinement in segregation. *J.H.*, 951 F.3d at 719.

Here, Plaintiff has alleged that his detention is more severe than the typical conditions of segregation. He has also alleged that those conditions had a particularly deleterious impact on him and exacerbated the symptoms of his mental illness. Plaintiff's allegations regarding segregation and the conditions therein, therefore, suffice to state an Eighth Amendment claim.

Plaintiff's allegations, however, do not involve the same active involvement on the part of each Defendant. Plaintiff contends that Defendants Washington and Dawdy are responsible for implementing the inadequate policies that lead to him receiving misconducts, being placed in segregation, and being subjected to the conditions therein. Likewise, Plaintiff alleges that Defendants Maranka, Sandborn, and Barber have personally been involved in classifying him to administrative segregation and depriving him of certain privileges.

With regard to Defendant Davids, however, Plaintiff only asserts that he has an illegal practice of subjecting him to sanctions and solitary confinement. (ECF No. 1, PageID.8.) Plaintiff, however, fails to allege that Defendant Davids was personally involved in his classifications to administrative segregation and the issuance of the misconducts that led to his placement in segregation.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can

supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendant Davids encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Davids was personally involved in the events surrounding Plaintiff's reclassification to administrative segregation. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Plaintiff's Eighth

12

Amendment claim against Defendant Davids regarding placement in segregation and the conditions therein will, therefore, be dismissed.

While Plaintiff has sufficiently stated active involvement on behalf of Defendants Washington, Dawdy, Maranka, Sandborn, and Barber, he has sued them in their individual and official capacities and seeks damages as well as declaratory and injunctive relief. (ECF No. 1, PageID.3–4, 10–11.) A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592–93 (6th Cir. 1989). The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims for monetary relief regarding his placement in segregation and the conditions therein against Defendants Washington, Dawdy, Maranka, Sandborn, and Barber in their respective official capacities.

Moreover, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). "Under the *Ex Parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law[.]" *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citing *Will*, 491 U.S. at 71 & n.10). Plaintiff, however, is no longer confined at ICF, where he avers Defendants Maranka, Sandborn, and Barber are employed. The Sixth Circuit has held that transfer to another prison facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Plaintiff is now incarcerated at MBP,

13

and Defendants Maranka, Sandborn, and Barber are not employed at that facility. Plaintiff, therefore, cannot maintain his Eighth Amendment claims for declaratory and injunctive relief regarding his placement in segregation and the conditions therein against Defendants Maranka, Sandborn, and Barber in their individual and official capacities, and such claims will be dismissed.

In sum, Plaintiff's Eighth Amendment claim against Defendant Davids regarding his placement in segregation and the conditions therein will be dismissed. Plaintiff's claims for monetary damages against Defendants Washington, Dawdy, Maranka, Sandborn, and Barber in their official capacities will be dismissed. Plaintiff's claims for declaratory and injunctive relief against Defendants Maranka, Sandborn, and Barber in their individual and official capacities will be dismissed. Plaintiff may proceed on his claims against Defendants Washington and Dawdy in their official capacities for declaratory and injunctive relief, and his claims against Defendants Washington, Dawdy, Maranka, Sandborn, and Barber in their individual capacities for monetary damages.

### 2. Denial of Mental Health Treatment[1]

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle*, 429 U.S. at 103–04. The Eighth Amendment requires prison officials to provide medically necessary mental health treatment as well. *See id.* at 103; *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2

---

[1] The detrimental impact of long-term segregation and the conditions therein on the symptoms of Plaintiff's mental illness could also be construed as deliberate indifference to a serious medical need on the part of those Defendants who kept Plaintiff in segregation. To the extent it was Plaintiff's intention to raise that Eighth Amendment claim, he has sufficiently stated that claim as well. Such claim appears to be coextensive with the conditions of confinement claim considered above and will not be analyzed separately.

(6th Cir. April 26, 1985). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Here, Plaintiff vaguely alleges that he did not receive mental health treatment during the occasions that he was placed in segregation. (ECF No. 1, PageID.6–8.) Plaintiff, however, has

15

alleged no facts suggesting that any of the named Defendants were personally involved in the denial of mental health treatment. Nothing in the complaint suggests that they were even aware that Plaintiff was not receiving treatment while in segregation. While Plaintiff alleges that Defendants Maranka, Sandborn, and Barber played an active role in placing him in segregation, these allegations do not permit the inference that these individuals played an active role in denying Plaintiff mental health treatment or even were aware that he was not receiving treatment. Nothing in the complaint permits the Court to infer that any of the named Defendants were deliberately indifferent to Plaintiff's need for mental health treatment. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims premised upon the denial of mental health treatment.

### B.   ADA and RA Claims

As noted above, Plaintiff asserts that Defendants violated Title II of the ADA and the RA when they "failed to provide [him] reasonable accommodations, and subjected [him] to intentional discrimination when they denied him programs, services, and activities." (ECF No. 1, PageID.10.)

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).[2] In order to state a claim under Title II of

---

[2] Similarly, § 504 of the RA provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson*

16

the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs).

Here, Plaintiff contends that Defendants have violated the ADA and RA by not accommodating his mental disability. Plaintiff alleges that he was denied various programs and services after being found guilty of misconducts that arose when Plaintiff was exhibiting symptoms and behavior related to his mental disability. The Court, therefore, concludes that Plaintiff has set forth plausible ADA and RA claims at this time.

Plaintiff, however, has sued Defendants in both their individual and official capacities. (ECF No. 1, PageID.3–4.) He also seeks declaratory and injunctive relief, as well as damages. (*Id.*, PageID.10–11.) The proper defendant under a Title II claim, however, is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97

---

*v. Williamson Cnty.*, 219 F.3d 555, 557 n.3 (6th Cir. 2000) (citing *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846 n.2 (6th Cir. 1995)).

(6th Cir. 2002). To the extent Plaintiff has sued all Defendants in their official capacities, his ADA and RA claims are, for all intents and purposes, against the State of Michigan as the real party in interest and, therefore, are properly brought. *See Brotherton v. Cleveland*, 173 F.3d 552, 560–61 (6th Cir. 2010). "Title II of the ADA does not . . . provide for suit against a public official acting in his individual capacity." *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). The Court, therefore, will dismiss any individual capacity ADA and RA claims Plaintiff asserts against Defendants.

The courts have recognized that, where an entity is named as a defendant, official capacity claims against employees of the entity are redundant. *See Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014) (finding official capacity suits against defendant agency's employees superfluous where the state and agency were also named as defendants); *see also Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 332, 327 (6th Cir. 2013) ("Having sued Waterford Township, the entity for which Bedell was an agent, the suit against Bedell in his official capacity was superfluous.") (citing *Foster*); *Petty v. Cnty. of Franklin*, 478 F.3d 341, 349 (6th Cir. 2007) ("To the extent that Petty's suit is against [Sheriff] Karnes in his *official* capacity, it is nothing more than a suit against Franklin County itself."), *abrogated on other grounds by Twombly,* 550 U.S. at 561–62, and *Iqbal*, 556 U.S. at 679. Likewise, Plaintiff's official capacity claims against Defendants Washington, Dawdy, Maranka, Davids, Sandborn, and Barber are redundant of one another because each constitutes an identical suit against the MDOC or the State of Michigan for a violation of the ADA and RA. *See Foster*, 573 F. App'x at 390 (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). The Court, therefore, will allow Plaintiff's official capacity claims under the ADA and RA only against Defendant Washington as the highest ranking named official.

Accordingly, Plaintiff's official capacity ADA and RA claims against Defendants Dawdy, Maranka, Davids, Sandborn, and Barber will be dismissed.

The MDOC and the State of Michigan (acting through Defendant Washington) are not necessarily immune from Plaintiff's claims under the ADA. The ADA and the RA "validly abrogate[] state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Mingus*, 591 F.3d at 482. In *Georgia*, an inmate alleged that certain conduct by prison officials independently violated his Eighth Amendment rights and Title II of the ADA. 546 U.S. at 157. Without deciding the accuracy of those allegations, the Court explained that the inmate's "claims for money damages against the State under Title II were evidently based . . . on conduct that independently violated the provisions of § 1 of the Fourteenth Amendment" because the guarantee against cruel and unusual punishment has been incorporated into the Due Process Clause of the Fourteenth Amendment. *Id.* As discussed *supra*, the Court has concluded that Plaintiff has alleged plausible Eighth Amendment claims premised upon placement in segregation and the conditions experienced therein. Thus, at this juncture, the Court will assume that Plaintiff's ADA and RA claims are not barred by sovereign immunity. Plaintiff, therefore, will be permitted to proceed on his official capacity ADA and RA claims against Defendant Washington.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Davids will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims: (1) Plaintiff's Eighth Amendment claims regarding his placement in segregation and the conditions therein for (a) monetary damages against Defendants Washington, Dawdy, Maranka, Sandborn, and Barber in their official capacities, and (b) Plaintiff's

19

claims for declaratory and injunctive relief against Defendants Maranka, Sandborn, and Barber in their individual and official capacities; (2) Plaintiff's Eighth Amendment claims against Defendants regarding the denial of mental health treatment; (3) Plaintiff's individual capacity ADA and RA claims against Defendants; and (4) Plaintiff's official capacity ADA and RA claims against Defendants Dawdy, Maranka, Sandborn, and Barber.

The following claims remain in the case: (1) Plaintiff's Eighth Amendment claims regarding his placement in segregation and the conditions therein for (a) declaratory and injunctive relief against Defendants Washington and Dawdy in their official capacities, and (b) monetary damages against Defendants Washington, Dawdy, Maranka, Sandborn, and Barber in their individual capacities; and (2) Plaintiff's official capacity ADA and RA claims against Defendant Washington.

An order consistent with this opinion will be entered.


Dated:  June 14, 2022                       /s/ Paul L. Maloney
                                            Paul L. Maloney
                                            United States District Judge